# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| In Re: Oswaldo Rodriguez ) | Bankruptcy Case No: 14-41542 |
| _____ ) | |
| ) | |
| AMERICREDIT FINANCIAL SERVICES, INC. ) | Chapter 7 |
| D/B/A GM FINANCIAL ) | |
| Plaintiff, ) | |
| vs. ) | Adversary No: 15-00009 |
| OSWALDO RODRIGUEZ, ) | |
| Defendant. ) | Judge Cox |

## NOTICE OF RESPONSE AND MEMORADUM IN OPPOSITION TO AMERICREDIT'S MOTION FOR SUMMARY JUDGMENT

VIA ELECTRONIC NOTICE:
Sorman and Frankel, Ltd., 180 N. LaSalle St., Suite 2700, Chicago, IL 60601

   Please take notice that on the December 30, 2015, OSWALDO RODRIGUEZ filed and served his Response and Memorandum In Opposition to AmeriCredit's Motion for Summary Judgment on the above named party.

                                             Respectfully submitted,


                                             /s/ Dustin B. Allen
                                             Dustin B. Allen, IARDC#6312451
                                             Attorney for the Debtor(s)

DAVID M. SIEGEL & ASSOCIATES
790 Chaddick Drive
Wheeling, Il 60090
847/ 520-8100

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: Oswaldo Rodriguez | ) | Bankruptcy Case No: 14-41542 |
| | ) | |
| _____ | ) | |
| | ) | |
| AMERICREDIT FINANCIAL SERVICES, INC. | ) | Chapter 7 |
| D/B/A GM FINANCIAL | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adversary No: 15-00009 |
| OSWALDO RODRIGUEZ, | ) | |
| Defendant. | ) | Judge Cox |

## RESPONSE AND MEMORADUM IN OPPOSITION TO AMERICREDIT'S MOTION FOR SUMMARY JUDGMENT

OSWALDO RODRIGUEZ, by and through his attorneys, David M. Siegel & Associates, respectfully request this court, pursuant to Fed. R. Bankr. P. 7056, Fed. R. Civ. P. 56, and Local Bankruptcy Rule 7056-2, to deny AmeriCredit's Motion for Summary Judgment. In support thereof, OSWALDO RODRIGUEZ submits the following Response and Memorandum in Opposition to AmeriCredit's Motion for Summary Judgment and states as follows:

**A. Relevant Facts**

Oswaldo Rodriguez, the Debtor, purchased a 2015 Chevrolet Equinox on October 21, 2014, from Grossinger City Autoplex, in Chicago, Illinois. At the time of the purchase, Mr. Rodriguez, the debtor, was self-employed, selling insurance independently and through his company, Game Plan Strategy.

At the time of the purchase on October 21, 2014, Mr. Rodriguez had just started earning income by driving with Uber. In the 4 days before the purchase of the vehicle, Mr. Rodriguez had earned $528.33 in fares and rates, with a take-home earning of $425.68 after Uber's fees.

Mr. Rodriguez learned that Uber had a relationship with Grossinger City Autoplex to provide vehicles to be used through Uber. On October 21, 2014, Mr. Rodriguez entered

1

Grossinger City Autoplex to view the deals offered. Mr. Rodriguez's former car, a 2008 Lexus ES350, was not perfectly suitable for an Uber job, and he hoped that a vehicle with more room for passengers and luggage would help him earn higher fares.

At Grossinger City Autoplex, Mr. Rodriguez spoke with salesman Jim Monti. However, he found the terms of the deal unaffordable. Mr. Monti then insisted that Mr. Rodriguez could get better loan terms if he bought the car outside of the Uber program. Mr. Rodriguez informed Mr. Monti that he had spoken with a bankruptcy attorney and was considering whether to file a Chapter 7 bankruptcy, and that he would be using the automobile to try to bring in extra income through Uber. Mr. Monti insisted that he had sold cars to other Uber drivers, who were making large sums of money, and that if Mr. Rodriguez wanted to keep the car, he could sign a reaffirmation agreement.

Mr. Rodriguez will testify that he does not have a clear memory of the signing of the credit application, which is a key document in this case. He recalls that he was nonchalantly handed a document to sign to run his credit at the beginning of the consultation, which he signed without inquiry, but he believes this came before they spoke about his finances and only related to a credit report. He will testify that he was unaware what his credit application listed for his income, rental expense and length of employment, and only learned the values listed after the commencement of this case. He will testify that he did not recognize the credit application upon viewing it when it was presented as part of this case, but he does acknowledge that it is his signature on it. He similarly learned that the credit application specifies that it is for "personal credit" and the contract indicates in the fine-print that the vehicle cannot be used as a taxi.

He believes that the income value came from a conversation he had with Mr. Monti in which he spoke about how much he was typically earning from his insurance job, the amount he

2

had earned so far with Uber, and the amount he was expecting to make in the future. Rodriguez does concede that there are some inaccuracies on the credit application, like his monthly rental expense, but he denies that these are numbers that he relayed to the salesperson.

As part of this deal, Mr. Rodriguez traded in his 2008 Lexus ES350, his only other form of transportation. This vehicle was fully paid off, with only 108,750 miles on the odometer.

Mr. Rodriguez later realized that he was not making as much money with Uber as he had expected, and it required an enormous time commitment to achieve satisfactory income, which affected his other job and family life. As a result, he realized that the automobile was not affordable. After relatively successful weeks of $985.85 and $875.86 as take-home income during the weeks immediately subsequent to the purchase, his Uber income then dropped off to $237.31 and $439.16 for the next two weeks.

Further, upon reviewing the retail installment contract, he felt cheated with the terms of the deal, and he believed that the automobile dealership had added back in amounts to the total amount financed that he had negotiated down. Mr. Rodriguez made repeated phone calls to Grossinger employees following the purchase, and also returned to Grossinger City Autoplex in an attempt to cancel the extended warranty. However, he was told that the special financing terms that were part of the first arrangement had expired. By cancelling the extended warranty, his interest rate would increase so much that his monthly payment would actually increase.

## B.  Summary of Applicable Statutes and Rules

1. Under Federal Rule of Bankruptcy Procedure 7056, Federal Rule of Civil Procedure 56 is applicable to summary judgment in adversary proceedings.

2. Under this Rule, õThe court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

3

law."

3. AmeriCredit brought this action under 11 U.S.C. §523(a)(2)(A), (a)(2)(B), and (a)(2)(C).

**11 U.S.C. §523(a)(2)(A) – Fraud Other Than Statements Regarding Financial Condition**

4. The first, 11 U.S.C. §523(a)(2)(A) aims to except from discharge debt obtained through "false pretenses, a false representation, or actual fraud," but excludes any statements "respecting the debtor's or an insider's financial condition."

5. Courts have held that three elements must be established for non-dischargeability under this section: one, that the debtor obtained money "through representations which the debtor either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation;" two, that the debtor "possessed scienter, i.e., an intent to deceive;" third, the creditor "must show that it actually relied on the false representation, and that its reliance was reasonable." In re Kimzey, 761 F.2d 421, 423 (7th Cir. 1985).

**11 U.S.C. §523(a)(2)(C) – Shifting the Burden for 11 U.S.C. §523(a)(2)(A)**

6. Section §523(a)(2)(A) is modified by §523(a)(2)(C), which modifies §523(a)(2)(A) exclusively, shifting the burden of proof to the debtor and creating a rebuttable presumption toward non-dischargeability in certain enumerated circumstances.

7. One such instance is for "consumer debts owed to a single creditor and aggregating more than $500 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief…." 11 U.S.C. §523(a)(2)(C).

8. Consumer debts is defined by 11 U.S.C. §101 as "debt incurred by an individual primarily for a personal, family, or household purpose."

9. Non-consumer debt is typically "debt incurred for a business venture or with a profit motive." In re Runski, 102 F.3d 744, 747 (4th Cir. 1996).

4

10. Additionally, under this section, "luxury goods" is not defined. The Code does specifically exclude "goods ... reasonably necessary for the support or maintenance of the debtor ..." See In re Faulk, 69 B.R. 743 (Banrk. N.D. Ind. 1986) ("The Code does not define the phrase 'luxury goods or services,' except to exclude from the definition....").

**11 U.S.C. §523(a)(2)(B) – A Statement In Writing**

11. Finally, §523(a)(2)(B) allows for a finding of fraud for certain written statements respecting a debtor's financial condition. The burden of proof is always with the creditor, as §523(a)(2)(C) does not apply to this section.

12. The statute provides clear elements as to this section, and a creditor must prove that a debtor used "a statement in writing– (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive...." 11 U.S.C. §523(a)(2)(B).

15. The "intent to deceive" element requires a "showing of fraudulent intent or moral turpitude on the part of the debtor." Carini v. Matera, 592 F. 2d 378, 380 (7th Cir. 1979).

16. The courts have looked to a "recurring guidepost" to determine materiality - "whether the lender would have made the loan had he known of the debtor's true financial condition." See e.g., Matter of Bogstad, 779 F. 2d 370 (7th Cir. 1985).

**C. Argument**

As an initial matter, the court should look at each statement individually to determine which section of the Bankruptcy Code applies. In the Plaintiff's Motion for Summary Judgment, PreTrial Brief, and Memorandum in Support of Summary Judgment, the Plaintiff alleges that certain statements are fraudulent. First, there are Non-Financial Statements, like attestations that

5

Mr. Rodriguez has read the signed contracts (which include certain restrictions, such as that the Vehicle cannot be used as a taxi for hire); these statements can only be viewed under 11 U.S.C. §523(a)(2)(A). The burden of proof under 11 U.S.C. §523(a)(2)(A) lies with the plaintiff unless the plaintiff can show that the debt is a consumer debt for a luxury good, under 11 U.S.C. §523(a)(2)(C). Secondly, there are Financial Statements that relate to the Debtor's financial condition, such as income and rental expense, for which 11 U.S.C. §523(a)(2)(B) only applies.

1. **The Vehicle was Neither a Consumer Debt Nor a Luxury Good, and the Rebuttable Presumption of Non-Dischargeability Under 11 USC §523(a)(2)(C) Does Not Apply.**

    Under 11 U.S.C. §523(a)(2)(C), a presumption applies towards non-dischargeability for "consumer debts owed to a single creditor and aggregating more than $500 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief…." This presumption only applies to claims under 11 U.S.C. §523(a)(2)(A).

    a. **"Consumer Debt"**

    "Consumer debt" is defined by 11 U.S.C. §101 as "debt incurred by an individual primarily for a personal, family, or household purpose." Non-consumer debt is typically "debt incurred for a business venture or with a profit motive." In re Runski, 102 F.3d 744, 747 (4th Cir.1996); See also In re Booth, 858 F.2d 1051, 1055 (5th Cir.1988) ("The test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family or household purposes, is whether it was incurred with an eye toward profit").

    Simply, because Mr. Rodriguez purchased the vehicle with the intent that the primary purpose of the vehicle was to be used to drive with Uber, and that he did actually use that vehicle primarily to drive with Uber, the court should hold that it is not a "consumer debt" within the meaning of 11 U.S.C. §101 and §523(a)(2)(C). While fine-print may have indicated that the Vehicle was not for use as a taxi, Mr. Rodriguez did not read or know about that fine-print, and

6

he relayed to the automobile salesman that he was purchasing the vehicle with the specific expectation that it be used for Uber; indeed, he and the automobile salesman discussed Uber at great length. Further, the plain language of the statute only contemplates the Debtor's "purpose" when determining if a debt is a consumer good, and Mr. Rodriguez's subsequent use of the Vehicle for Uber makes his purpose clear.

### b. "Luxury Goods or Services"

Even if the Court finds that the purchase is a "consumer debt" under 11 U.S.C. §523(a)(2)(C), the section would still not apply because the incursion of debt is not for "luxury goods or services." Under this section, "luxury goods or services" does not include "goods or services reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor…." The statute does not describe what "luxury goods or services" does include. See e.g., In re Faulk, 69 BR 743 (Bankr. N.D. Ind. 1986) ("The Code does not define the phrase "luxury goods or services," except to exclude from the definition….").

Courts have grappled with the definition of "luxury goods or services" in the absence of statutory language, mainly looking at the totality of the particular circumstances of the debt. See e.g., In re Davis, 56 B.R. 120 (Bankr. D. Mont. 1985). Courts have looked at many factors, including "whether it replaced an existing item that had outlived its usefulness or was a new acquisition, whether it was used in the ordinary activities of daily living,… and so forth." Id.

Debtor's purchase of the vehicle does not classify as a "luxury." The court should look to the totality of the circumstances when making this decision. While indeed a new car, the purpose of the purchase was to facilitate Debtor's employment with Uber and not simply personal pleasure. Indeed, Debtor specifically wanted a larger vehicle to more easily transport larger

7

number of passengers and larger amounts of cargo; he had a profit motive. In addition, Debtor traded in a paid-off Lexus to help facilitate the purchase.

On the whole, the Court should hold that the Vehicle was neither a "consumer debt" nor a "luxury good," and as a result, the rebuttable presumption of non-dischargeability does not apply, and the Plaintiff is required to prove all elements of a 11 U.S.C. §523(a)(2)(A) claim by a preponderance of the evidence. Even if the Court does find that the presumption does apply, the Debtor is able to rebut this presumption with a showing of their own.

**2. Issues of Material Fact Still Exist to Prevent Summary Judgment under 11 U.S.C. §523(a)(2)(A)**

Debt incurred by fraud can be excepted from discharge under 11 U.S.C. §523(a)(2)(A). For a debt to be considered non-dischargeable under this section, three elements must be proven: one, that the debtor obtained money "through representations which the which the debtor either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation;" two, that the debtor "possessed scienter, i.e., an intent to deceive;" third, the creditor "must show that it actually relied on the false representation, and that its reliance was reasonable." In re Kimzey, 761 F.2d 421, 423 (7th Cir. 1985). Each element must be proven by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279 (1991).

**a. "Scienter"**

One essential element in determining a debt non-dischargeable under §523(a)(2)(A) is the debtor's scienter, or actual intent to deceive. "'Constructive' fraud" alone will not suffice; only "'actual' or 'positive' fraud" is actionable. In re Mercer, 246 F. 3d 391 (5th Cir. 2001) (citing Ames v. Moir, 138 U.S. 306, 311 (1891) ("fraud in the act ... defining [non-dischargeability] ... means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, ... and not

8

implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality" (internal quotation marks omitted)).

Courts, noting how difficult it is to prove a Debtor's subjective intent, have examined the conduct required to satisfy the scienter element of fraud for the purposes of exception from discharge, mainly looking at the totality of the circumstances. In re Paul, 266 B.R. 686 (Bankr. N.D. Ill. 2001). Courts have laid out several suggestive factors to consider, but while these factors are often instructive on determining the state of mind of a debtor, the critical issue is the subjective intent. In re Alvi, 191 B.R. 724 (Bankr. N.D. Ill. 1996). This subjective intent is measured at the time of the incursion of debt; while later developments may allow for intent to be inferred, "ensuing conduct contrary to a former representation by a debtor does not establish that the original representation was false." In re Scarpello, 272 B.R. 691 (Bankr. N.D. Ill. 2002).

Plaintiff's Motion for Summary Judgment, PreTrial Brief, and Memorandum in Support of Summary Judgment allege two types of fraudulent statements: that Mr. Rodriguez indicated that he intended to remain liable for the debt, and that Mr. Rodriguez intended to use the vehicle for personal and not business purposes.

Certainly, some factors pointed out by the Plaintiff weigh against Mr. Rodriguez. There is a short time between purchase of the vehicle and when a bankruptcy attorney was consulted (but not retained) prior to the purchase. However, the other factors act to rebut any inference that Mr. Rodriguez had moral turpitude or did not intend to pay for the vehicle at the time of the purchase. Mr. Rodriguez traded in his only other source of transportation as part of the deal; there is no incentive to purchase a vehicle with the intent to surrender it after filing a bankruptcy, when the Debtor had no other source of transportation and would need to ultimately obtain another vehicle again. Additionally, he and the salesperson did speak about reaffirmation

9

agreements, showing that while he may have been contemplating bankruptcy at the time of purchase, he had the intent to keep the vehicle.

Further, Mr. Rodriguez's conduct after the purchase shows that the intent to surrender the vehicle arose after the inception of the deal. He repeatedly called members of Grossinger because he was dissatisfied with the deal. He even returned to the dealership to try to remove his extended warranty, but was told that by canceling the extended warranty, his interest rate would increase, leading to a higher payment.

Finally, the Debtor's income through Uber shows that between the time of purchase and the time of filing, his financial condition and feeling regarding his income had changed. In the four days that he worked with Uber, leading up to the purchase of the Vehicle, the Debtor made $425.68 take-home in fares. This income peaked in the two weeks subsequent to the purchase, when he made, weekly, $985.85 take-home ($1,229.64 gross fares) and $875.86 ($1,092.97 gross fares). However, he was only to achieve this through an enormous time commitment, which affected his other job and family life. After these high months, Mr. Rodriguez's Uber income dropped to $237.31 take-home ($308.22 gross) and $439.16 take-home ($480.38 gross) in the two weeks before filing for bankruptcy.

The record is clear that Mr. Rodriguez went to Grossinger City Autoplex with the intent to purchase a vehicle for use through Uber and that he did use that Vehicle through Uber, and that Grossinger was specifically chosen due to their relationship with Uber. As part of the discussions about Mr. Rodriguez's income, he and the salesman spoke at great length about his employment with Uber, and the salesman even enticed Mr. Rodriguez with information about other Uber drives making large sums of money. The credit application and contract were filled out by the salesman, and Mr. Rodriguez simply deferred to the expert in the room when he

10

signed them without careful review. No evidence has been cited that Mr. Rodriguez knew that the contracts he signed were for a vehicle that could not be used to drive with Uber, and Mr. Rodriguez has testified that he did not know this fact. While some boiler-plate, fine-print language specified otherwise, he could not have formed moral turpitude or wrongful intent without even knowing that the facts existed.

Questions of scienter are questions of fact to be determined by the finder of fact. Based on the factors enumerated, the Court should find that either the Plaintiff has not carried their burden of proving by a preponderance of evidence that the Debtor possessed the requisite Scienter, or should hold that the factor is Scienter is still a material fact in dispute. Even if the Plaintiff is able to prevail under 11 U.S.C. §523(a)(2)(C) to show that there is a rebuttable presumption towards non-dischargeability, the Court should find that the factors discussed are enough to rebut the presumption and deny the Motion for Summary Judgment.

### 3. Plaintiff Has Not Met Their Burden of Proof or Issues of Material Fact Still Exist to Prevent Summary Judgment under 11 U.S.C. §523(a)(2)(B)

Under 11 U.S.C. §523(a)(2)(B), a creditor must prove that a debtor used "a statement in writing— (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive… ." All elements must be proven by the party objecting from the discharge of debt by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279 (1991).

### a. "Intent to Deceive"

The first inquiry is whether the creditor can show that the statements made by the debtor were made with an "intent to deceive." 11 U.S.C. §523(a)(2)(B). This "intent to deceive" is a "showing of fraudulent intent or moral turpitude on the part of the debtor." <u>Carini v. Matera</u>, 592

11

F. 2d 378, 380 (7th Cir. 1979).  While courts have held that a reckless disregard might provide some evidence of the debtor's intent, reckless disregard is not the standard needed to be proven. See Matter of Sheridan, 57 F. 3d 627 (7th Cir. 1995) (õKimzey stated that an intent to deceive may be inferred from certain evidence and did not hold that a court must infer intent [í .] Whether to infer the requisite intent is left to the bankruptcy court that presides over the case.).

It is the burden of AmeriCredit to establish that Mr. Rodriguez formed the requisite intent to deceive them.  The circumstances of the formation of the credit application leads to the conclusion that Mr. Rodriguez did not form the requisite intent to deceive the creditor.  Clearly, as the document was typed at the dealership, Mr. Rodriguez himself did not insert the financial information onto the credit application.  Mr. Rodriguez's lack of recollection about signing the document and the contents of the document suggest that he did not know the facts being presented, making it impossible for him to form the requisite intent to deceive.  Finally, the fact that Mr. Rodriguez walked into Grossinger City Autoplex to potentially get a vehicle for use through Uber and walked out with a car not to be used as a taxi suggests duplicity on the part of the automobile salesman, and can also lead to the inference that the credit application was not presented to him in a manner by the dealership that allowed him to be fully cognizant of what he was signing, leading to the conclusion that he could not have formed the requisite intent.  See, e.g., In re Bailey, 147 BR 157 (ND Ill. 1992) (holding that a creditor did not establish fraudulent intent when, among other factors, a third party filed out a credit application that the debtor later signed).  As Mr. Rodriguez was not even aware until the inception of this adversary case that the credit application contained these specific numbers for income, rental expense, and length of employment, he could not have formed the requisite intent to deceive.

12

Some items mentioned by AmeriCredit may point to the moral turpitude of Mr. Rodirguez and that he did not intend to pay for the loan. He did not make a payment on the vehicle and certain elements of the credit application are untrue, like the rent payment. Further, the contract does state that the vehicle financed through the loan would not be used for taxi services, which was the primary purpose of the loan. However, the overwhelming majority of the evidence points to the fact that Mr. Rodriguez intended to pay for the vehicle at the time of the contract's inception. As discussed in prior sections, Mr. Rodriguez traded in his only other means of transportation as part of the deal. Mr. Rodriguez made repeated phone calls to Grossinger City Autoplex and its employees in the days subsequent to the purchase, evidencing the change in his state of mind. Indeed, he returned to Grossinger City Autoplex with the intent of canceling his extended warranty to try to lower his monthly payment, again evidencing that his intent to surrender the car arose after the inception of the deal.

While Plaintiff's PreTrial Brief does quote Kimzey, it is important to note that the same court later clarified that "Kimzey stated that an intent to deceive *may* be inferred from certain evidence and did not hold that a court *must* infer intent [...] Whether to infer the requisite intent is left to the bankruptcy court that presides over the case.). Matter of Sheridan, 57 F. 3d 627 (7th Cir. 1995) (citing In re Kimzey, 761 F.2d 421 (7th Cir. 1985)) (emphasis added).

**b. "Materially False"**

Among the elements of 11 U.S.C. §523(a)(2)(B), the creditor must prove that the statement in writing is "materially false." Courts have looked to "a recurring guidepost" to determine materiality - "whether the lender would have made the loan had he known of the debtor's true financial condition." Matter of Bogstad, 779 F. 2d 370 (7th Cir. 1985); In re Bryson, 187 B.R. 939, 962 (calling this approach the "but for" approach).

13

Scrutinizing whether a statement is materially false is an important consideration. Given the nature of bankruptcy, it is important that creditors are not able to escape a discharge of their claims simply because they can identify non-material false information leading to the formation of the debt; they must show that they only accepted the deal because of a specific representation, which is why the "but for" approach is the best approach to determining materiality.

In this case, the credit application did not provide any guidance of how to calculate income for the purposes of the application. Mr. Rodriguez simply relayed the information about his self-employment and new employment to the automobile dealership, which generated the application on his behalf. At the time of the formation of the credit application, Mr. Rodriguez's insurance income and Uber income (although a small sample size) together were substantially higher at the time of the formation of the contract than when he filed for bankruptcy later.

While there are other minor inconsistencies, like the incorrect information about his rental expense, the creditor still holds the burden of proving that this inconsistency is material to the formation of the contract. The length of employment is a factor that could lead a lender to think that an applicant's employment is more stable, but the creditor must show at least that this is a factor that they even consider when forming a contract; under the "but-for" test, they also must show that the loan would not have been financed had the creditor known of the debtor's financial circumstances. Similarly, a change in rental expense may lead a lender to think that an applicant had more disposable monthly income, but the debtor may well have qualified for the loan if the finance company knew the correct amount. Indeed, the Plaintiff points out that the credit application states that it is for "personal credit," but does not supply evidence that they would not have offered the loan had they known the car was to be used for driving with Uber.

14

Ultimately, the Plaintiff has not offered any evidence that they would not have issued the loan "but-for" the specific numbers listed on the credit application, and as a result, the Motion for Summary Judgment should be denied as to any claims under 11 U.S.C. §523(a)(2)(B).

**Wherefore**, OSWALDO RODRIGUEZ, respectfully requests that this Court deny AmeriCredit's Motion for Summary Judgment, and for any other relief that this Court deems proper.

    Respectfully submitted,

    /s/ Dustin B. Allen
    Dustin B. Allen, IARDC#6312451
    Attorney for the Debtor(s)

DAVID M. SIEGEL & ASSOCIATES
790 Chaddick Drive
Wheeling, Il 60090
847/ 520-8100