**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Oswaldo Rodriguez, | ) | Case No. 14 B 41542 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| AMERICREDIT FINANCIAL SERVICES | ) | |
| INC., D/B/A GM FINANCIAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. 15 A 00009 |
| | ) | |
| Oswaldo Rodriguez, | ) | |
| | ) | |
| Defendant. | ) | Judge Jacqueline P. Cox |

**Memorandum Opinion**

**I. Jurisdiction**

Bankruptcy courts have authority by statute to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). Core proceedings include determinations of the dischargeability of a particular debt, the matter at issue herein. 28 U.S.C. § 157(b)(2)(I).

The federal district courts have original and exclusive jurisdiction of all cases under title 11, the Bankruptcy Code. 28 U.S.C. § 1334(a). The district courts may refer cases under title 11, and any or all proceedings arising under title 11 or arising in or related to a case under title 11, to the bankruptcy judges for their district. 28 U.S.C. § 157(a). The District Court for the Northern District of Illinois has referred its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

## II. Facts and Background

Plaintiff, AmeriCredit Financial Services, Inc., D/B/A/ GM Financial ("AmeriCredit"), is authorized to conduct business in the State of Illinois. It purchases retail installment contracts executed by purchasers of new and used motor vehicles. The purchasers make payments to AmeriCredit.

On October 21, 2014, Debtor Oswaldo Rodriguez went to the Grossinger Autoplex dealership to consider purchasing a motor vehicle. At the time he owned a 2008 Lexus motor vehicle which was unencumbered by any liens and in good working condition. He had recently started driving as an independent contractor for Uber, the ride-sharing service, to earn extra money to supplement his salary as an insurance salesman. At Uber's suggestion he sought a larger vehicle to transport passengers with luggage to area airports.

According to the Debtor's testimony Uber referred him to the dealership. He was hesitant at first about buying a vehicle and refused to lease one vehicle because he could not afford the proposed $1000 monthly payment. He eventually filled out an application to finance a 2015 Chevrolet Equinox which he purchased for $39,332.16, with a monthly payment of $546.28.

The Debtor contemplated filing for bankruptcy relief as early as 2010. One month before he purchased the Equinox he consulted with a bankruptcy attorney about seeking bankruptcy relief.

The Debtor sought relief under chapter 7 of the Bankruptcy Code on November 18, 2014, less than a month after the vehicle purchase. He expressed an intent to reaffirm the debt with GM Financial. *See* Chapter 7 Individual Debtor's Statement of Intention, Bankruptcy Case 14-41542, Docket Number 1, p. 32. However, the debt has not been reaffirmed; no reaffirmation agreement has been filed on the docket in this case to date as required by 11 U.S.C. § 524(c)(3).

On January 12, 2015, Plaintiff, AmeriCredit, initiated the adversary proceeding herein seeking to have the debt associated with the purchase of the Equinox held to be not dischargable because the Debtor refused to enter into a reaffirmation agreement and because he purchased the vehicle under the false pretense that he intended to remain liable for payments under the contract when he purchased the vehicle, a luxury item, less than ninety days prior to commencing this

-2-

bankruptcy case.

The idea that a refusal to reaffirm a debt is evidence that the debtor never intended to remain liable on the debt is not persuasive. The reaffirmation process involves the voluntary undertaking of a debt; the record does not support penalizing the Debtor for not agreeing to maintain the debt. The Plaintiff's contention lacks merit.

The Debtor claims to not understand how the credit application showed his salary to be in excess of what he actually earned. He suggested that the excess was equal to the amount he should have made as an Uber driver. He presented an Uber ad for a financing program (Defense Exhibit #1) that encourages Uber drivers to purchase cars from certain dealerships. Was his income stated at the higher level at his suggestion only? Was the amount listed intended to show future income? The absence of testimony from Uber and the dealership makes it difficult to find against the Debtor on this issue.

In addition, no evidence or information was presented describing the relationship between Uber and the car dealership. While Uber was not a party to the sale, it had a role in the transaction, a role that has not been illuminated.

### III. Applicable Law

This adversary proceeding objecting to the discharge of the debt in question was brought pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B) and 523(a)(2)(C).

Creditors seeking to establish exceptions to discharge bear the burden of proof. *Goldberg Sec., Inc. v. Scarlata (In re Scarlata),* 979 F.2d 521, 524 (7th Cir. 1992). A creditor must meet this burden by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991). In addition, exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor. *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir. 1985).

### A. 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) provides that a discharge under Section 727 of the Bankruptcy Code does not discharge an individual debtor from a debt to the extent it was obtained by false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's financial condition.

AmeriCredit contends that because the Debtor bought the vehicle soon after he conferred

with a bankruptcy lawyer and filed for bankruptcy protection one month after the purchase, he purchased it under false pretenses, knowing that he would file for bankruptcy at the time of the purchase. The evidence does not support this contention. The Debtor testified credibly that he filed for bankruptcy protection after realizing that he could not make enough money from his participation in the Uber program to afford the vehicle.

AmeriCredit also contends that the Debtor obtained financing by representing that the vehicle was being acquired for personal use when he intended to use it for business purposes to make money in the Uber program. If the Debtor's testimony is to be believed about Uber directing him to the dealership, the dealership or AmeriCredit may have known that the Debtor was acquiring the vehicle for personal and/or business purposes. Uber referred the Debtor to the car dealership; Uber and the dealership may have known that the vehicle would be used to supplement the Debtor's income.

To qualify for Uber's financing program a driver/purchaser has to enter a Payment Deduction Authorization Agreement which allows Uber to deduct the vehicle payments from funds earned through the Uber program. *See* Defense Exhibit #1. Uber did more than refer the Debtor to a auto dealer; it facilitated the collection of the amounts due on the debt. However, there is no testimony or information of record from Uber or the dealership about the terms of their relationship.

### B. 11 U.S.C. § 523(a)(2)(B)

Section 523(a)(2)(B) provides that a chapter 7 discharge does not cover debts incurred using a writing that is materially false respecting a debtor's financial condition on which a creditor reasonably relies where the debtor caused the statement to be made with intent to deceive. The credit application is a written statement respecting the Debtor's financial condition on which the creditor reasonably relied. However, it has not been proven by a preponderance of the evidence that the Debtor made the statements therein with intent to deceive. He may not have been the only party involved with putting information onto the relevant forms. Nor is there information regarding who else had an interest in getting the sale made.

There is a problem regarding his salary. He reported a monthly salary of $6500 on the credit application. However, he later reported a monthly salary of $4,440 on his Schedule I in the

bankruptcy case. The higher amount may represent an anticipated increase in funds he would earn through Uber. Because no one from Uber or the dealership testified herein the Court will rule in the Debtor's favor; the Plaintiff has not carried its burden of proof on ths issue.

There is also a discrepancy regarding his monthly rental expense. His credit application stated an expense of $500. His bankruptcy Schedule J indicates that his rent was $1,075. This discrepancy is unreasonable on the Debtor's part. However, the Court will not deny him a discharge of this debt for this reason alone without testimony from others involved with putting information onto the credit application form.

### C. 11 U.S.C. § 523(a)(2)(C)

Section 523(a)(2)(C) provides that consumer debts owed to a single creditor and aggregating more than $650 for luxury goods or services incurred by an individual within 90 days before filing for bankruptcy relief are presumed to be nondischargeable. The vehicle was purchased within 90 days of the filing date.

Subsection (ii)(II) of that provision states that the term luxury goods does not include goods reasonably necessary for the support or maintenance of a debtor or a dependent of the debtor. 11 U.S.C. § 523(a)(2)(C)(ii)(II). The Court finds that the vehicle was used in part for the Debtor's support. For that reason the debt is not nondischargeable.

The presumption of nondischargeability does arise herein. However, it is rebuttable. *In re Green,* 296 B.R. 173, 179 (Bankr. C.D. Ill. 2003). The presumption shifts the burden of persuasion to the debtor who has to show nonfraudulent intent in connection with the debt. *In re Orecchio,* 109 B.R. 285, 289-90 (Bankr. S.D. Ohio 1989). The Debtor has rebutted the presumption. Based on his substantial and credible testimony, the Court finds that the debt was not incurred in contemplation of discharge. He genuinely thought that he could earn enough money through Uber to finance the debt.

### IV. Conclusion

The Court finds that the Plaintiff has not carried its burden of proof by a preponderance of the evidence. Judgment will be entered against Plaintiff, AmeriCredit Financial Services, Inc., D/B/A GM Financial, and in favor of Defendant, Oswaldo Rodriguez, on the adversary complaint. The $9,786.61 debt now held by the Plaintiff will be discharged.

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Judgment Order will be entered.

**Dated: March 10, 2016**   **ENTERED:**

_Jacqueline P. Cox_
**Jacqueline P. Cox**
**United States Bankruptcy Judge**